## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK BRAULT AND | : | CIVIL NO. 3:23-cv-00696-OAW |
| CAROL BRAULT, | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT DEPARTMENT OF | : | |
| ENERGY AND ENVIRONMENTAL | : | |
| PROTECTION | : | |
| *Defendant.* | : | June 20, 2023 |

### MEMORANDUM IN SUPPORT OF THE DEFENDANT'S
### MOTION TO DISMISS

This case, fundamentally, is about a bear and a hundred-acre wood. The plaintiffs in this action, Mark and Carol Brault, claim that the Defendant, the State of Connecticut's Department of Energy and Environmental Protection (the "Department"), is engaged in an attempt to intrusively search through their property, violating their Fourth Amendment rights, through use of a common American Black Bear who has been equipped with a camera. Fortunately, the Court need not delve too far into the fantastical nature of these allegations, as this matter can and should be dismissed under binding jurisprudence.

First, this Court lacks jurisdiction to hear this matter, because the Eleventh Amendment bars the filing of any constitutional claim against a State in the federal courts. Alternatively, although plead as a violation of 42 USC § 1983, state agencies are not "persons" for the purpose of §1983. Even if the Court were to generously put the deficiency of the claim under § 1983 aside, all the activity alleged in the complaint

1

falls squarely within the "open fields" doctrine under the Fourth Amendment. Consequently, the underlying action does not state a *prima face* claim for which relief can be granted. For any or all of these reasons, the Department's motion to dismiss should be granted.

### FACTUAL BACKGROUND RELEVANT TO THIS MOTION

As alleged, the plaintiffs are the owners of property located at 217 Hi View Road in Hartland, Connecticut. *Complaint*, ¶ 4 (ECF No. 1). The property is a large, forested parcel totaling greater than one hundred and fourteen acres. *Compl.,* ¶ 5. The plaintiffs' home is located somewhere within the hundreds of acres they own and is marked with no trespassing signs. *Compl.,* ¶¶ 5, 6.

The Department is a state agency of the State of Connecticut, tasked with the conservation and regulation of wildlife within the State. *See* Conn. Gen. Stat. § 26-3 *et* seq; *Compl.*, ¶ 3. The plaintiffs allege that the Department was aware that American Black Bears, including one tagged by the Department and designated as "Bear 119," frequented their property. *Compl.,* ¶ 6.

In addition to living on the property, the plaintiffs are joint members and directors of a limited liability corporation, Nature Havens, LLC, which operated on the property. *See Hartland v. Brault,* No. LLI-CV21-6026840-S, Joint Stipulation of Facts, Docket No. 130.00, ¶ 5.[1] During its operation, the limited liability corporation

---

[1] When determining a motion to dismiss pursuant to Rule 12 (b) (6), courts may consider "matters of which judicial notice may be taken." *Roth v. CitiMortgage Inc.,* 756 F.3d 178, 180 (2d Cir. 2014), *quoting Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). Generally, judicial notice is appropriate "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Nastasi & Associates v. Bloomberg, LP,* 2021 U.S. Dist. LEXIS 151101 at *16 (D. Conn., Aug. 11, 2021). There is an exception to the general rule,

"charged fees for accessing [the plaintiffs'] property and viewing wildlife, including bears." *Hartland, supra*, Defendants' Proposed Findings of Fact, Docket No. 132.00, p.3. The plaintiffs assert that the Department tags bears adjacent to, but not on, the plaintiffs' property, including Bear 119. *Compl.*, Affidavit of Mark Brault, ¶ 5.

The plaintiffs allege that sometime in early 2023, between January and May, the Department attached a collar to Bear 119 which contained a camera. *Compl.,* ¶ 7. The Defendant then allegedly released Bear 119 "in the vicinity of the plaintiffs' property." *Compl.*, ¶ 7. On May 20, 2023, Bear 119 wandered onto the plaintiffs' property, coming "within 200 yards" of the plaintiffs' house at the center of the property. *Compl.,* ¶ 8. The plaintiffs assert that the camera on Bear 119 was active and was transmitting "pictures or video" of the property to the Department. *Compl.,* ¶ 8.

## PROCEDURAL BACKGROUND

The plaintiffs filed their Complaint on May 30, 2023. (ECF No. 1). The plaintiffs served the Department on June 1, 2023, with an answer due on June 22, 2023. (ECF No. 8). Contemporaneous to this motion, the Department has filed a motion to stay the deadlines for Federal Rule of Civil Procedure 26 (f) and to stay discovery. (ECF No. 11)

---

however, when "a party makes an admission in another judicial proceeding. . . ." *Id., quoting 5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512, 519 (E.D.N.Y. 1996).

Here, the plaintiffs in an attached affidavit raise their ongoing *Hartland v. Brault* litigation in Connecticut Superior Court and make assertions about the testimony in that action. (Complaint, Affidavit of Mark Brault, 3-5) Thus, "[t]he Court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action" *Nastasi & Associates,* 2021 U.S. Dist. LEXIS 151101 at *17, *quoting Harris v. New York State Dept. of Health*, 202 F. Supp.2d 143, 173 n.13 (S.D.N.Y. 2002). To conform to this rule, the Department cites only to the joint stipulation of facts and the plaintiffs' own assertion of facts in the *Hartland* matter.

<u>**ARGUMENT**</u>

**I.     The Standard for this Motion to Dismiss**

This Motion is filed pursuant to Federal Rule of Civil Procedure 12 (b) (1) and (6). As is well-settled law, the Eleventh Amendment implicates this Court's subject matter jurisdiction and therefore is properly raised in a Rule 12 (b) (1) Motion. *See, e.g.*, *Williams v. Marinelli*, 987 F.3d 188, 196 (2d Cir. 2021).

To also avoid dismissal under Rule 12 (b) (6), a complaint "'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 299 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Accordingly, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**II.    The Eleventh Amendment Bars Plaintiffs' Claims Against Defendants in their Entirety**

In this action, the sole defendant named by the plaintiffs is the State of Connecticut's Department of Environmental Protection, against whom the plaintiffs are seeking injunctive relief. *See Compl.*, ¶¶ 1, 3. The Eleventh Amendment bars the plaintiffs' action against the Department in its entirety. It has been long held that where — as here — an "'action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting *any*

relief on that claim.'" *Green Haven Prison Preparative Meeting of The Religious Society of Friends v. New York State Dept. of Corrections & Community Supervision*, 2022 U.S. Dist. LEXIS 56065, at *30-31 (S.D.N.Y. Mar. 28, 2022) ("*Green Haven*") (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120 (1984) (emphasis in *Green Haven*)). This includes those suits against States sounding in equity, not just in law, and applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp.,* 465 U.S. at 100-101 (*citing Missouri v. Fiske,* 290 U.S. 18, 27 (1933)).

That same protection under the Eleventh Amendment has been extended to State agencies, as an extension of the state itself. *See, e.g., Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (noting that "a suit against a state agency or department constitutes a suit against a state for Eleventh Amendment purposes"); *see also Pennhurst State Sch. & Hosp.,* 465 U.S. at 100 (noting that the Eleventh Amendment applies when the state is the "real, substantial party in interest," and *quoting Ford Motor Co. v. Dept. of Treasury of Indiana,* 32  U.S. 459, 464 (1945)).

Here, it cannot be disputed that the plaintiffs have sought relief directly from an agency of the State of Connecticut. The allegations extend solely to the Department itself, and therefore are clearly barred by the Eleventh Amendment. "For over a century we have reaffirmed that the federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" *Seminole Tribe v. Florida,* 517 U.S. 44, 54 (1996) (*quoting Hans v. Louisiana,* 134 U.S. 1, 15 (1890)). The Eleventh Amendment

acts as a complete bar to the instant matter, and therefore the plaintiffs' action should be dismissed.

### III.   Plaintiff's Complaint Fails to State a Claim Against Defendants Upon Which Relief Can Be Granted

In the alternative, the Court can dismiss the plaintiffs' action on the basis of Rule 12 (b) (6), in that the plaintiffs have not stated a *prima face* claim that is facially plausible. There are two reasons why the underlying claim is not plausible. First, although the action sounds in 42 U.S.C. § 1983, a State agency is not a "person" under § 1983 and therefore the section cannot be used in an action against the Department. Second, even if an action could be imputed against the Department under § 1983, the allegations in the complaint, if assumed to be true, fall clearly within the well-established "open fields doctrine" under the Fourth Amendment, and therefore do not make out a *prima face* claim of a violation of the plaintiffs' constitutional rights.

Initially, the plaintiffs' complaint is not detailed in its allegations of its cause of action. The complaint contains at most "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which the Supreme Court has held "do not suffice." *Iqbal,* 556 U.S. at 678. Reading the plaintiffs' complaint generously, however, it appears that the only federal claim they assert are pursuant to 42 U.S.C. § 1983, alleging an unlawful search and seizure under the Fourth Amendment of the United States Constitution. These allegations fail to state a claim upon which relief can be granted for two reasons.

First, the State, state agencies, and state officials acting in their official capacities "are not persons within the meaning of section 1983." *Mayo v. Doe*, 480 F.

Sup. 3d 395, 402 (D. Conn. 2020) (Bolden, J.) (discussing "state agencies or subdivisions thereof"); *see also Mercer v. Schriro*, 337 F. Sup. 3d 109, 136 (D. Conn. 2018) (Haight, J.) (noting that "the United States Supreme Court explicitly held 'that neither a State nor its officials acting in their official capacities are 'persons' under § 1983" (*quoting Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Here, the plaintiffs have only named a state agency as the defendant. The Department is not considered a "person" for the purpose of § 1983, and therefore the plaintiffs' claim can be dismissed on that ground alone. *See, e.g.*, *Mayo*, 480 F. Sup. 3d at 402.

Alternatively, even if the Court were to accept that § 1983 somehow did apply to the Department, the conduct alleged would not allow the court to plausibly draw a reasonable inference that the Department conducted an illegal search of the plaintiffs' property under the Fourth Amendment. *Iqbal,* 556 U.S. at 678. Rather, the activity in this matter falls squarely into the well-established "open fields" doctrine.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects," against unreasonable searches. U.S. Const. Amend. IV. This list "indicates with some precisions the places and things encompassed by its protections." *Oliver v. United States*, 466 U.S. 170, 176 (1984). "The Fourth Amendment does not, therefore, prevent all investigations conducted on private property; for example, and officer may . . . gather information in what we have called 'open fields' — even if those fields are privately owned — because such fields are not enumerated in the Amendment's text." *Florida v. Jardines,* 569 U.S. 1, 6

(2013). "As Justice Holmes explained . . . in his characteristically laconic style: '[the] special protection accorded by the Fourth Amendment to the people in their persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." *Oliver,* 466 U.S. at 176 (quoting *Hester v. United States,* 265 U.S. 57, 59 (1924)).

"An open field is traditionally described as the unoccupied or undeveloped area outside a home's 'curtilage,' with curtilage defined rather obliquely as the 'and immediately surrounding and associate with the home.'" *United States v. Kolokouris,* 2015 U.S. Dist. LEXIS 153985 at * 14 (W.D.N.Y. Nov. 13, 2015) (*quoting Oliver*, 466 U.S. at 180). An open field "'need be neither 'open' nor a 'field' as those terms are used in the common speech.'" *Dow Chemical Co. v. United States,* 476 U.S. 227, 236 (1986) (*quoting Oliver*, 466 U.S. at 180 n.11). Indeed, the Supreme Court has expressly suggested that "a thickly wooded area" is an example of an open field for the purpose of the Fourth Amendment. *Oliver*, 466 U.S. at 180 n.11. "Quite simply, an open field, unlike the curtilage of a home . . . is not one of those protected areas enumerated in the Fourth Amendment. . . . The Government's physical intrusion on such an area . . . . is of no Fourth Amendment significance." *United States v. Jones,* 565 U.S. 400, 411 (2012) (citations omitted).

Assuming that Bear 119 was operating as an "officer" and was "gathering information;"[2]    *Jardines*, 569 U.S. at 6; the allegations contained within the

---

[2] The plaintiffs' allegations operate under the implication that Bear 119, wandering upon its own into the plaintiffs' property, somehow was either an agent or tool of the Department in its wanderings, which the Department strongly denies was the case. As fascinating as it might be to

plaintiffs' complaint only allege that Bear 119 accessed their open fields — as bears generally  do. The vast, one hundred fourteen-acre woodland described as the property in this case falls squarely within the example of an open field described by the Supreme Court in *Oliver*. The plaintiffs allege no barriers to secure the property from intrusion by bear or other animals; in fact, the plaintiffs' business being operated on the property induced both the public *and* bears to visit the property — for the purpose of the former to observe the latter. "No one in a place opened to public view can expect privacy in that place and at that time." *Palmieri v. Lynch,* 392 F.3d 73, 83 (2d Cir. 2004) (*quoting United States v. Gori*, 230 F.3d 44, 54 (2d Cir. 2000)).[3]

Nor do the allegations in the Complaint rise to a search of the plaintiffs' curtilage. Notably, the plaintiffs do not claim that their curtilage was intruded upon, nor that their home was searched; rather, they plead that their "property" was "surveill[ed]." *Compl.,* ¶¶ 9, 10. At most, the plaintiffs allege that Bear 119 passed somewhere within two-hundred yards of their home in the center of their property. "While the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.'" *Jardines*, 569 U.S. at 7 (*quoting Oliver*, 466 U.S. at 182 n.12). No reasonable individual would expect a location two football fields from their home to constitute the curtilage of the home. The United States Supreme Court has

---

contemplate the agency relationship between a bear and its home State, the Court need not do so, because the open fields doctrine is dispositive on the assumption such a relationship existed.

[3] The plaintiffs do allege that they had posted "No Trespassing" signs on the property, without specifically delineating details about the signage. *Compl.,* ¶ 4. Simple no trespassing signs have been rejected by the Supreme Court as being insufficient to transform open fields into property protected under the Fourth Amendment. *Oliver*, 466 U.S. 182.

rejected, for example, the search of a barn a mere sixty yards from a home as being insufficiently close for the purpose of establishing curtilage. *United States v. Dunn*, 480 U.S. 294, 301-303 (1987).

Perhaps the Fourth Circuit has described the open fields doctrine and its applicability to the instant matter best:

> The idea of a video camera constantly recording activities on one's property is undoubtedly unsettling to some. Individuals might engage in any number of intimate activities on their wooded property or open field — from romantic trysts under a moonlit sky to relieving oneself . . . — and do so under the belief that they are not being observed. But the protection of the Fourth Amendment is not predicated upon those subjective beliefs.

*United States v. Vankesteren,* 553 F.3d 286 (4th Cir.), *cert. denied sub nom Vankesteren v. United States,* 556 U.S. 1269 (2009). Read most generously, a bear with a camera aimlessly strolled through the open fields of the plaintiffs' property and came within some nine hundred feet of their house. Such does not state a plausible claim of a violation of the Fourth Amendment upon which a reasonable inference could be made that the Department is liable. The plaintiffs' Complaint, therefore, should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, the Defendant, the State of Connecticut's Department of Energy and Environmental Protection, respectfully request that this Court dismiss this action with prejudice.

Respectfully submitted,

THE DEFENDANT
STATE OF CONNECTICUT
DEPARTMENT OF ENERGY AND
ENVIRONMENTAL PROTECTION

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Daniel M. Salton*
Daniel M. Salton
Federal Bar No. ct30670
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5250
Fax: (860) 808-5386
daniel.salton@ct.gov
*Attorney for The Defendant*

## <u>Certificate of Service</u>

I hereby certify that on June 20, 2023, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>*/s/ Daniel M. Salton*</u>
Daniel M. Salton
Assistant Attorney General